# United States Court of Appeals for the Federal Circuit

---

**BARBARA D. RICHARDSON, IN HER CAPACITY AS RECEIVER OF NEVADA HEALTH CO-OP.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2022-1520

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01731-MHS, Judge Matthew H. Solomson.

---

Decided: August 9, 2024

---

MARK FERRARIO, Greenberg Traurig, LLP, Las Vegas, NV, argued for plaintiff-appellee. Also represented by TAMI D. COWDEN, DONALD J. PRUNTY; MELISSA PAIGE PRUSOCK, MICHAEL J. SCHAENGOLD, Washington, DC.

TERRANCE MEBANE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BRIAN M. BOYNTON, RUTH A. HARVEY, KIRK THOMAS MANHARDT, PHILLIP SELIGMAN.

---

Before LOURIE, REYNA, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

The government appeals from a decision of the United States Court of Federal Claims granting summary judgment in favor of Barbara D. Richardson, the Nevada Commissioner of Insurance, acting in her position as the receiver (the "Receiver") for the Nevada Health CO-OP ("Nevada Health"). *Richardson v. United States*, 157 Fed. Cl. 342 (2021) ("*Decision*"). The Court of Federal Claims held that the government improperly withheld statutory payments it owed Nevada Health. *Decision* at 347. The trial court also held, sua sponte, that the government cannot—in the future—invoke 31 U.S.C. § 3728 to withhold these payments owed. *Id.* at 374–75. For the reasons below, we affirm the court's judgment in favor of Nevada Health on its claims for withheld payments. However, we hold that the trial court exceeded its jurisdiction when it purported to address § 3728, and we vacate that portion of its order.

## I. BACKGROUND

This case concerns several provisions of the Patient Protection and Affordable Care Act (the "ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010) (codified as amended in scattered sections of 26 U.S.C. and 42 U.S.C.). There is a series of programs under which the government distributes payments to certain health insurers. These programs include the reinsurance, risk corridors, and risk adjustment programs, all of which are "aimed at stabilizing health insurance premiums." *Conway v. United States*, 997 F.3d 1198, 1202 (Fed. Cir. 2021); *see also* 42 U.S.C. §§ 18061–18063. Another related ACA program is the "Cost Sharing Reduction" program, under which the Department of Health and Human Services ("HHS") compensates insurers for reducing certain costs for individuals below designated household income thresholds. *See* 42 U.S.C. § 18071(c)(1), (c)(3); *see also Decision* at 349.

This case also involves loans issued under the ACA's Consumer Operated and Oriented Plan ("CO-OP") program. 42 U.S.C. § 18042(a). Section 18042(b)(1) directs HHS to issue two types of loans to "persons applying to become qualified nonprofit health insurance issuers": (A) loans to assist with start-up costs ("start-up loans"); and (B) grants to assist in meeting state solvency requirements ("solvency loans").[1] *Id.* This case concerns a start-up loan issued under the CO-OP program.

Nevada Health's predecessor in interest, Hospitality Health, Ltd. ("Hospitality"), was a Nevada health maintenance organization that received two loans as part of the CO-OP program. *Decision* at 349; J.A. 63. In May 2012, Hospitality entered into a loan agreement with the Centers for Medicare & Medicaid Services ("CMS"), an HHS agency, including a start-up loan of $17,105,047 ("Start-Up Loan") and a solvency loan of $48,820,349 ("Solvency Loan"). *Decision* at 349; J.A. 63. The loans were subsequently assigned to Nevada Health. *Decision* at 349; J.A. 135–36.

In 2015, Nevada Health "experienced significant financial distress" and was declared "unsound" by state regulators. *Decision* at 350; J.A. 2021. State regulators ordered that Nevada Health cease Nevada insurance operations, and the Nevada Commissioner of Insurance filed a petition in state court to be appointed as receiver for Nevada Health. *Decision* at 350; J.A. 2017. Shortly thereafter, the state court issued a permanent injunction and order appointing the Commissioner of Insurance as Receiver.

---

[1] Both the loans and grants were to be repaid, *id.* § 18042(b)(3), and the Final Rule implementing the program refers to both as "loans." ACA; Establishment of Consumer Operated and Oriented Plan (CO-OP) Program, 76 Fed. Reg. 77392, 77394 (Dec. 13, 2011) ("Final Rule"). Accordingly, we refer to both types of assistance as loans here.

*Decision* at 350; J.A. 2067–68. The court ordered that all claims against Nevada Health or its assets "must be submitted to the Receiver . . . to the exclusion of any other method" of resolution. J.A. 2071; *Decision* at 351.

In December 2015, CMS terminated the loan agreement, citing the suspension of Nevada Health's operating license and prohibition from offering health insurance in 2016. J.A. 2081; *Decision* at 351. CMS then placed an "administrative hold" on payments due to Nevada Health, and starting in August 2016, CMS began to "offset payments due to [Nevada Health] with amounts [Nevada Health] allegedly owed the government pursuant to the Start-Up Loan."[2] *Decision* at 351–52; J.A. 2084–85.

In September 2016, the state court placed Nevada Health in liquidation. *Decision* at 352; J.A. 2098–99. In October 2016, it approved the receivership claims procedure with a deadline of April 28, 2017 to file claims. *Decision* at 352; J.A. 2102–03; J.A. 2098–99. The government filed a Proof of Claim seeking repayment of the loans, asserting they were "entitled to treatment as secured claims to the extent they are subject to set-off by a claim of [Nevada Health] against the United States." *Decision* at 352; J.A. 2107–08.

In June 2017, the Receiver denied the government's claim, finding that:

---

[2] "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (internal quotation marks and citation omitted). The term "offset" is interchangeable with "setoff." *See Offset, Black's Law Dictionary* (9th ed. 2009); *Decision* at 347 n.1.

> (1) pursuant to state law and the Loan Agreement, the government's claim was subordinate in priority to policyholder and administrative expense claims; (2) [Nevada Health's] estate was not anticipated to be sufficient to satisfy even claims that had a higher priority than the government's claim; and (3) the government's claimed setoff would violate the Receivership Order.

*Decision* at 352 (citing J.A. 2114–17). The notice explained that if the government did not appeal according to the designated process, the claim would become "final and non-appealable." J.A. 2116; *Decision* at 352. The government did not appeal. *Decision* at 352.

In November 2018, the Receiver filed suit in the Court of Federal Claims to recover amounts allegedly owed to Nevada Health under the ACA's risk corridor, reinsurance, risk adjustment, and Cost Sharing Reduction programs. *Id.* at 347, 352; J.A. 150, 185–90. The Receiver alleged that the government's offsets for Nevada Health's obligations under the Start-Up Loan were improper and breached the loan agreement. J.A. 190–92. The government filed a motion to dismiss, reasserting its right to offset amounts owed under the Start-Up Loan, J.A. 210, 220, and the Receiver filed a cross-motion for summary judgment. J.A. 939; *Decision* at 347.

In November 2021, the Court of Federal Claims granted the Receiver's motion for summary judgment, finding the government liable for each type of payment. *Decision* at 354. The court held the government's offsets were "precluded by: (1) the parties' Loan Agreement; and (2) Nevada state law as implemented via the state receivership and liquidation proceedings, in which the government participated." *Id.* at 355. The court also held that the government may not invoke 31 U.S.C. § 3728—which enables Treasury to offset judgments against the government against other debts—to reassert offsets, even though "the

parties have not addressed that statute in this case." *Id.* at 374–75. The court entered final judgment in favor of the Receiver. J.A. 49.

The government timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

We review the Court of Federal Claims' grant of summary judgment de novo. *Shell Oil Co. v. United States*, 896 F.3d 1299, 1314 (Fed. Cir. 2018). We review conclusions of law by the Court of Federal Claims de novo. *Starr Int'l Co. v. United States*, 856 F.3d 953, 963 (Fed. Cir. 2017). "Contract interpretation is a question of law, which we review de novo." *Nova Grp./Tutor-Saliba v. United States*, 87 F.4th 1375, 1379 (Fed. Cir. 2023).

## III. DISCUSSION

On appeal, the government asserts (1) "[t]he trial court erred by holding that HHS explicitly contracted away its offset rights in Section 3.4 of the Loan Agreement"; (2) the government is "not collaterally estopped from asserting its offset rights in federal court"; and (3) the trial court erred by addressing 31 U.S.C. § 3728. Appellant's Br. 18. As explained below, we hold that the government waived its offset rights by subordinating the Start-Up Loan through the loan agreement. Accordingly, we do not reach the issue of whether the government was collaterally estopped from asserting its offset rights in federal court.[3] Finally, we hold the Court of Federal Claims exceeded its jurisdiction by

---

[3] We need not reach this issue in order to affirm. *See* Oral Arg. 22:33–22:42, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1520_01112024.mp3 (Appellee agreeing we need not reach the latter issue to affirm).

addressing 31 U.S.C. § 3728 and vacate this portion of its order.

A.

First, we address whether the government was entitled to offset the balance owed on the Start-Up Loan against statutory payments it owed Nevada Health under the ACA. The government asserts that both federal law and Nevada law create a right to offset and that the "Loan Agreement expressly preserved HHS's offset rights in the event of a default." Appellant's Br. 20–21. We disagree. By subordinating its loans under Section 3.4 of the agreement, the government relinquished its ability to assert offset rights before senior claimants are satisfied.

A party may contract around the right to offset. *See id.* at 20 (conceding "offset rights can be waived");[4] *Applied Cos. v. United States*, 144 F.3d 1470, 1476 (Fed. Cir. 1998) (acknowledging contract provisions may bar exercise of set-offs). We conclude the parties did so here. We start with the plain language of the contract. Section 3.4 provides that both loans "have a claim on cash flow and reserves of Borrower that is subordinate to (a) claims payments, (b) Basic Operating Expenses, and (c) maintenance of required reserve funds while Borrower is operating as a CO-OP under State Insurance Laws." J.A. 63. Borrower was defined as Hospitality, J.A. 50, 58, which is the predecessor in interest to Nevada Health. Under the plain text of this provision, the government's claim under the loan agreement is subordinate to claims payments and Basic Operating Expenses. The Court of Federal Claims further found

[4] Although the government suggests that Nevada law *requires* offsets of mutual debts, Appellant's Br. 20 (citing Nev. Rev. Stat. § 696B.440(1)), it concedes that the parties did waive offset rights for at least the Solvency Loan. *Id.* at 22–23.

that the parties agreed "that all available funds [in Nevada Health's estate] will be exhausted by the superior creditors delineated in the Section 3.4." *Decision* at 366; *see also* J.A. 1693–94 (Receiver's declaration stating that Nevada Health "has never had any excess surplus assets throughout its receivership"). Allowing the government to assert its offsets would in effect elevate its claim to Nevada Health's cash flows above that of these superior creditors, directly contradicting Section 3.4. Accordingly, we hold that the government may not withhold payments it owed to Nevada Health to jump ahead of policyholders before these superior creditors are fully satisfied.

The government challenges this conclusion on several bases. The government first asserts that "Section 3.4 does not address circumstances of default," Appellant's Br. 30, and "cannot be read to override the specific provisions of the Loan Agreement that address default." *Id.* at 25. The government notes that "the text of Section 3.4 does not mention 'default,' 'bankruptcy' (or insolvency), 'senior' or 'junior' creditors, or subordinated damages claims." *Id.* However, the term "subordinate" itself refers to creditor priority, which is critical in default or bankruptcy. For example, a "debt-subordination agreement" is defined as "[a] contract under which a *junior* creditor must wait for payment until all the debtor's existing *senior* creditors are paid." *Subordination Agreement*, *Black's Law Dictionary* (11th ed. 2019) (emphases added). Under a subordination agreement, "one creditor (the junior creditor) agrees that, in the event of a *default* or *bankruptcy*, another creditor (the senior creditor) will receive repayment in full before the junior creditor receives payment on its loans." *In re Se. Banking Corp.*, 156 F.3d 1114, 1118 (11th Cir. 1998) (emphases added).

The government next argues that the phrase "while [Nevada Health] [Borrower] is operating as a CO-OP under State Insurance Laws" applies to the entire provision relating to "claim on cash flow and reserves." Appellant's Br.

27 (first insertion in original). Thus, the government argues Section 3.4 "operates as a security provision that expresses the parties' agreement that Nevada Health prioritize the payments required for its continued operations over repayment of the loans while Nevada Health is operating as a CO-OP." *Id.* at 26. The government is incorrect.

The government's "reading disregards—indeed, is precisely contrary to—the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Here, the phrase "while Borrower is operating as a CO-OP" immediately follows "(c) maintenance of required reserve funds," J.A. 63, and "should ordinarily be read as modifying only" that clause. *Barnhart*, 540 U.S. at 26. Accordingly, the government's claim is subordinated to the insurer's obligation to maintain required reserve funds only while Nevada Health is operating as a CO-OP. However, the government's claim remains subordinate to "claims payments" and "Basic Operating Expenses" whether or not Nevada Health continues to operate as a CO-OP.

Although the "last antecedent rule" is a "guideline," not an absolute rule, the surrounding language in the agreement supports this construction. *See Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008). Claim payments and basic operating expenses are the first debts that must be paid from the estate of an insurer upon liquidation. *See* Nev. Rev. Stat. § 696B.420(1)(a)–(b). By contrast, the obligation to maintain required reserve funds applies only while an insurer offers insurance. *See* J.A. 62 (defining "State Reserve Requirements" as requirements the borrower must meet to "deliver[] . . . health insurance under a CO-OP . . . and to issue" plans); J.A. 63.

The loan agreement's reference to "reserves" bolsters this conclusion. J.A. 63 ("claim on cash flow and reserves"). The purpose of reserves and risk-based capital is "to ensure that [insurers] will be able to meet future obligations they have contractually promised their enrollees." Final Rule, 76 Fed. Reg. at 77409; *see also Reserve*, *Black's Law Dictionary* (9th ed. 2009) ("Something retained or stored for future use; esp., a fund of money set aside by a bank or an insurance company to cover future liabilities."). Reserves thus help satisfy claim payments owed if an insurer would otherwise be unable to pay, as is the case in insolvency. *See Insolvency*, *Black's Law Dictionary* (9th ed. 2009) (insolvency is "[a]lso termed failure to meet obligations"); Nev. Rev. Stat. § 696B.110 (defining insolvency). In sum, Section 3.4 subordinates the government's interest below that of claim payments and basic operating expenses even in insolvency. The government may not offset its statutory obligations against the Start-Up Loan to jump ahead of these creditors.

The government next asserts that Section 19.12 of the contract "expressly preserved HHS's offset rights in the event of a default" and gave HHS the "absolute right to offset." Appellant's Br. 21. It argues the "notwithstanding" clause "override[s] conflicting provisions of any other section." *Id.* (citation omitted). As explained below, we disagree with both assertions.

Section 19.12 titled "Right of Set-Off" states:

> Notwithstanding any other provisions of this Agreement to the contrary, in the event any Event of Default is not cured or another accommodation permissible under this Agreement is not otherwise reached within applicable notice and cure periods, Lender shall have at its disposal the full range of available rights, remedies and techniques to collect delinquent debts, such as those found in the Federal Claims Collection Standards and applicable

> Treasury regulations, as appropriate, including demand letters, administrative offset, salary offset, tax refund offset, private collection agencies, cross-servicing by the Treasury, and litigation.

J.A. 94.

Section 19.12 does not guarantee an unqualified right to offset payments owed. The provision allows the lender the "full range of *available* rights, remedies and techniques . . . *as appropriate*." J.A. 94 (emphases added). This provision does not create any rights—it "preserve[s]" existing rights. Appellant's Br. 21. As the government explained at oral argument, "'[A]vailable' is just a *general* reference to the rights, remedies, and techniques that are typically available to the government, and 'appropriate' just makes it clear that the government is entitled to use . . . *whatever right is appropriate to those circumstances*." Oral Arg. 2:55–3:08 (emphases added). Whether a right is available and appropriate to the circumstances necessarily depends on other provisions of the contract. Here, because the government was not entitled to payment before claims and operating expenses were satisfied, the offset was not an available right.

The subordination clause is not in conflict with Section 19.12. Rather, this section helps establish the circumstances in which offset rights are appropriate. *Cf. Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override *conflicting* provisions of any other section.") (emphasis added). The fact that that the provision discusses "rights, remedies and techniques" generally—including offsets, litigation, and collection agencies—further undercuts the government's argument that this clause expresses the parties' intent to effectuate an "absolute right to offset." J.A. 94; Appellant's Br. 21; *see also* 45 C.F.R. § 156.520(d) ("Loan recipients that fail to make loan

payments [as required] . . . will be subject to any and all remedies available to CMS under law to collect the debt.").

The government is also incorrect that the interpretation that we adopt renders Section 19.12 meaningless. *See* Appellant's Br. 28. We hold only that under Section 3.4, the government may not assert offset rights to jump ahead of claims expressly made senior under that provision. The right to offset may be available and appropriate in circumstances other than the case before us. For example, we do not reach whether the government could assert offset rights if there were sufficient proceeds to satisfy the classes of claims mentioned in Section 3.4. In sum, we hold that Section 19.12 does not preserve offset rights in insolvency that were otherwise relinquished by Section 3.4.

Lastly, the government cites a 2013 amendment to the *Solvency* Loan—which expressly waived offset rights for that loan—as evidence that the Start-Up Loan "remained subject to offset" under the unamended original agreement. Appellant's Br. 22–23; *see also* Appellant's Reply Br. 7; J.A. 138–45. We are unpersuaded. The 2013 amendment to the Solvency Loan does not alter what the government agreed to under Section 3.4 of the original agreement that governs the Start-Up Loan. The government is also incorrect that our interpretation of Section 3.4 renders the amendment superfluous. *See* Appellant's Reply Br. 6–7. As explained, we hold only that Section 3.4 precludes the government from asserting an offset ahead of claims expressly addressed in that provision. By contrast, the amendment made clear that the Solvency Loan may never be the basis of an offset, regardless of the seniority of other claims. *See* J.A. 144 (stating the Solvency Loan "may not be offset . . . with respect to *any* liability or obligation owed to Borrower") (emphasis added). The fact that the parties amended the Solvency Loan to completely waive offset rights does not imply that the original agreement did not partially relinquish these rights. Accordingly, the

amendment does not compel us to reconsider our interpretation of the original loan agreement.

B.

Next, we address the trial court's determination that the government may not invoke 31 U.S.C. § 3728 to reassert the challenged offsets. *Decision* at 374–76. The court reached this issue "in the interest of avoiding future—and, in the Court's view, unnecessary—proceedings," even though it acknowledged that "the parties have not addressed that statute in this case." *Id.* at 374. We hold that the trial court exceeded its jurisdiction by ruling on this issue.

Under 31 U.S.C. § 3728(a), "[t]he Secretary of the Treasury shall withhold paying that part of a judgment against the United States Government presented to the Secretary that is equal to a debt the plaintiff owes the Government." If the plaintiff does not agree to the offset, the Secretary shall "have a civil action brought if one has not already been brought." 31 U.S.C. § 3728 (b)(2). The Court of Federal Claims held "that the government is not entitled to collect any amounts under the Loan Agreement until superior creditors, specified in Section 3.4, are satisfied and the Nevada liquidation process permits the government to recover. Until then, there is nothing for the Treasury to setoff, and any civil action by the government to recover—following the issuance of a judgment in this case—would be barred as *res judicata*." *Decision* at 375.

Under the Tucker Act, the jurisdiction of the Court of Federal Claims is limited to claims for monetary relief, with a few narrow exceptions inapplicable here. 28 U.S.C. § 1491; *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004). The court lacks the "general authority" to grant such declaratory judgment relief. *See, e.g.*, *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716–17 (Fed. Cir. 1998). The government has never asserted the right to offset payments owed under 31 U.S.C. § 3728 in the

present litigation. *See Decision* at 374–75. Here, the court's determination that a hypothetical civil suit by the government under 31 U.S.C. § 3728 would be barred by the doctrine of res judicata exceeded the court's limited jurisdiction.

The Receiver's arguments do not persuade us the Court of Federal Claims had jurisdiction. Accordingly, we vacate this portion of the order without addressing the merits of this issue that was never raised by the parties below. *See Plan. Rsch. Corp. v. United States*, 971 F.2d 736, 743 (Fed. Cir. 1992) (vacating a Board of Contract Appeals holding that "went beyond its . . . jurisdiction").

## IV. Conclusion

We have considered the government's remaining arguments and find them unpersuasive. For the above reasons, we affirm the judgment of the Court of Federal Claims in favor of the Receiver. We vacate that portion of the court's order purporting to address the government's ability to offset any judgment under 31 U.S.C. § 3728.

**AFFIRMED-IN-PART, VACATED-IN-PART**

## Costs

No costs.